

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BILBO TOMAS,<br>CDCR #G-51177,<br><br>                                    Plaintiff,<br><br>            vs.<br><br>GEORGE NEOTTI, Warden; PAT COLSTON, Community Resource Manager; E. FRANKLIN, Appeals Coordinator; BILL BROWN, Chaplain,<br><br>                                    Defendants. | Civil No.    09cv1070 BTM (NLS)<br><br><br>**ORDER GRANTING DEFENDANTS MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED.R.CIV.P. 12(b) AND 42 U.S.C. § 1997e**<br><br>**[Doc. No. 11]** |

## I.    PROCEDURAL BACKGROUND

Tomas Bilbo ("Plaintiff"), a prisoner currently incarcerated at the Richard J. Donovan Correctional Facility ("Donovan") in San Diego, California, proceeding pro se and *in forma pauperis,* has filed a civil rights action pursuant to 42 U.S.C. § 1983.

Defendants Neotti, Colston, Franklin and Brown ("Defendants") have filed a Motion to Dismiss Plaintiff's Complaint pursuant to FED.R.CIV.P. 12(b) and 12(b)(6) [Doc. No.  11]. Plaintiff filed his Opposition on October 30, 2009 [Doc. No. 18] to which Defendants have filed their Reply [Doc. No. 19].

/ / /

/ / /

The Court has determined that Defendants' Motion is suitable for disposition upon the papers without oral argument and that no Report and Recommendation from Magistrate Judge Nita L. Stormes is necessary. *See* S.D. CAL. CIVLR 7.1(d)(1), 72.3(e).

## II.  PLAINTIFF'S FACTUAL ALLEGATIONS

Upon Plaintiff's arrival at Donovan on March 12, 2009, he informed the Facility Sergeant that he is a practicing Rastafarian, and as such, his religious beliefs required a vegetarian diet. *See* Compl. at 3.  Plaintiff further informed the Sergeant that the vegetarian diet was also helpful for his diabetes. *Id.*  Later that day, Plaintiff was interviewed by a prison doctor who informed him that if he wished to have a vegetarian diet for medical reasons, he must go through "proper channels, because Donovan only allowed for specialized diets for prisoners who were on dialysis. *Id.*  Plaintiff asked the prison doctor to speak with the facility chaplain to facilitate the diet for religious reasons as well. *Id.*

On April 26, 2009, Sergeant Bracomantis interviewed Plaintiff and told Plaintiff he was "checking into how I get my diet." *Id.* at 4.  Plaintiff told Sergeant Bracomantis that his religious beliefs prohibit him from eating meat and a vegetarian diet helps to control his diabetes. *Id.*  Plaintiff claims that since he has been forced to go without the vegetarian diet he has been unable to regulate his blood sugar levels which causes him to experience "migraine headaches, blurred vision, dizziness, severe cramps" and pain in his extremities. *Id.*  Plaintiff submitted several requests to meet with the prison chaplain in order to facilitate obtaining a vegetarian diet but his requests never received a response. *Id.*  Plaintiff also wrote requests to Defendant Colston, Community Resource Manager, and Defendant Franklin, Appeals Coordinator. *Id.*

Captain B. Morris came to visit Plaintiff on May 7, 2009 and issued Plaintiff a "temporary handwritten diet permit." *Id.*  He further informed Plaintiff that the Supervisors and Sergeants in his facility had been "apprised as to my dietary needs." *Id.*  However, two days later, Plaintiff was again denied his vegetarian diet. *Id.*  On May 9, 2009, Plaintiff went to the "chow hall" and provided the note written by Captain Morris to Correctional Officer Thomas. *Id.* at 5.

/ / /

/ / /

1   Thomas refused to provide Plaintiff with the vegetarian meal and told Plaintiff "I don't
2   care about your diet, I don't know or work for Captain [Morris], so if you don't want what is
3   served get the hell out of the kitchen." *Id.*

4   **III.   DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)**

5   The Court will first consider Defendants' arguments that Plaintiff's Complaint should be
6   dismissed for failing to exhaust available administrative remedies pursuant to FED.R.CIV.P.
7   12(b) and 42 U.S.C. § 1997e(a).

8   **A.   Standard of Review per FED.R.CIV. 12(b) and 42 U.S.C. § 1997e(a)**

9   Defendants claim Plaintiff failed to exhaust available administrative remedies pursuant
10   to 42 U.S.C. § 1997e(a) before bringing this suit, therefore, they seek dismissal under the "non-
11   enumerated" provisions of FED.R.CIV.P. 12(b).  The Ninth Circuit has held that "failure to
12   exhaust nonjudicial remedies is a matter of abatement" not going to the merits of the case and
13   is properly raised pursuant to a motion to dismiss, including a non-enumerated motion under
14   FED.R.CIV.P. 12(b).  *See Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003) It is also well
15   established that non-exhaustion of administrative remedies as set forth in 42 U.S.C. § 1997e(a)
16   is an affirmative defense which defendant prison officials have the burden of raising and
17   proving. *See Jones v. Bock,* 594 U.S. 199, 216 (2007);  *Wyatt*, 315 F.3d at 1119.  However,
18   unlike under Rule 12(b)(6), "[i]n deciding a motion to dismiss for failure to exhaust nonjudicial
19   remedies, the court may look beyond the pleadings and decide disputed issues of fact." *Wyatt*,
20   F.3d  at 1120.

21   **B.   Exhaustion of Administrative Remedies per 42 U.S.C. § 1997e(a)**

22   The Prison Litigation Reform Act ("PLRA") amended 42 U.S.C. § 1997e(a) to provide
23   that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a
24   prisoner confined in any jail, prison or other correctional facility until such administrative
25   remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  "Once within the discretion of
26   the district court, exhaustion in cases covered by § 1997e(a) is now mandatory." *Porter v.*
27   *Nussle*, 534 U.S. 516, 532 (2002).  42 U.S.C. § 1997e(a) has been construed broadly to "afford
28   [ ] corrections officials time and opportunity to address complaints internally before allowing

1    the initiation of a federal case, *id.* at 525-26, and to encompass inmate suits about both general

2    circumstances and particular episodes of prison life--including incidents of alleged excessive

3    force. *Id.* at 532. Finally, "[t]he 'available' 'remed[y]' must be 'exhausted' before a complaint

4    under § 1983 may be entertained," "regardless of the relief offered through administrative

5    procedures." *Booth v. Churner*, 532 U.S. 731, 738, 741 (2001); *see also McKinney v. Carey*,

6    311 F.3d 1198, 1200-01 (9th Cir. 2002) (finding that prisoner's civil rights action must be

7    dismissed without prejudice unless prisoner exhausted available administrative remedies *before*

8    he filed suit, even if he fully exhausts while the suit is pending).

9         The State of California provides its prisoners and parolees the right to administratively

10   appeal "any departmental decision, action, condition or policy perceived by those individuals

11   as adversely affecting their welfare." CAL. CODE REGS., tit. 15 § 3084.1(a). In order to exhaust

12   available administrative remedies within this system, a prisoner must proceed through several

13   levels: (1) informal resolution, (2) formal written appeal on a CDC 602 inmate appeal form, (3)

14   second level appeal to the institution head or designee, and (4) third level appeal to the Director

15   of the California Department of Corrections. *Barry v. Ratelle*, 985 F. Supp. 1235, 1237 (S.D.

16   Cal. 1997) (citing CAL. CODE REGS. tit. 15 § 3084.5).

17        **C.**     **Application of 42 U.S.C. § 1997e(a) to Plaintiff's Case**

18        Defendants argue that Plaintiff failed to exhaust his administrative remedies *prior* to filing

19   this lawsuit. In support of their claim, Defendants provide the Declaration of G. Pederson,

20   Appeals Coordinator at Donovan. *See* Defs.' Mot, Pederson Decl. In this Declaration, Pederson

21   claims that he searched Donovan's "Inmate/Parolee Appeals Tracking System for appeals filed

22   by Bilbo Thomas." *Id.* at ¶ 6. This search found two appeals filed by Plaintiff that were

23   "screened-out (i.e. rejected) because Plaintiff failed to attempt to resolve the issue at the informal

24   level of review, which is required by Title 15 regulations." *Id.* at ¶ 7. These "rejections"

25   included "written instructions on how to cure the defect." *Id.*

26        While this appears to be an accurate representation of the initial attempts by Plaintiff to

27   exhaust his administrative grievances, Plaintiff attaches additional CDCR 602 Inmate/Parolee

28   forms which appear to be further attempts to exhaust his administrative remedies in regard to the

1    issues in this action.  *See* Pl.'s Opp'n at 43, 46.  In both of these grievances, one is stamped
2    received on March 26, 2009 and the other is stamped received on April 13, 2009, it appears that
3    Plaintiff was attempting to rectify his initial procedural errors and resolve these grievances at
4    the informal level of review.

5        Both of these forms contain a staff response that indicate Plaintiff's request is "Granted"
6    at the informal level of review on May 25, 2009.  While the Court would typically find that this
7    "grant" has exhausted Plaintiff's administrative remedies, Plaintiff filed this action too soon.
8    Plaintiff filed his Complaint on May 11, 2009, which is two weeks prior to the prison's response
9    to his administrative grievances.   As stated above,  42 U.S.C. § 1997e(a) has been construed
10   broadly to "afford [ ] corrections officials time and opportunity to address complaints internally
11   before allowing the initiation of a federal case. *Porter*, 534 U.S. at 525-26; *see also Vaden v.*
12   *Summerhill*, 449 F.3d 1047, 1051 (9th Cir. 2006) (A prison may "initiate litigation in federal
13   court only after the administrative process ends and leaves his grievances unredressed," as it
14   would be "inconsistent with the objectives of [42 U.S.C. § 1997e] to let him submit his
15   complaint any earlier than that.").

16       Moreover, the Supreme Court has made clear that Plaintiff must "properly exhaust" his
17   administrative remedies before filing a prison conditions action.  In *Woodford v. Ngo*, 548 U.S.
18   81, 91 (2006), the Supreme Court held that "[p]roper exhaustion demands compliance with an
19   agency's deadlines and other critical procedural rules because no adjudicative system can
20   function effectively without imposing some orderly structure on the course of its proceedings."
21   *Woodford*, 548 U.S. at 91.  The Court further held that "[proper exhaustion] means ... a prisoner
22   must complete the administrative review process in accordance with the applicable procedural
23   rules ... as a precondition to bring suit in federal court." *Id.*

24       Plaintiff has failed to rebut Defendants' showing that he failed to properly exhaust his
25   administrative grievances prior to bringing this action. Thus, the Court **GRANTS** Defendants'
26   Motion to Dismiss Plaintiff's Complaint for failing to exhaust his administrative remedies as
27   required by 42 U.S.C. § 1997e(a).  This dismissal is without prejudice to permit Plaintiff to file
28   a separate action once he has properly exhausted his administrative remedies.  The Court will

1  not address the remainder of Defendants' Motion as dismissal of the entire action without

2  prejudice is warranted at this time.

3  **IV.    CONCLUSION AND ORDER**

4        Based on the foregoing, the Court hereby:

5        **GRANTS** Defendants' Motion to Dismiss Plaintiff's Complaint for failure to exhaust his

6  administrative remedies pursuant to FED.R.CIV.P. 12(b) and 42 U.S.C. § 1997e(a).   This

7  dismissal is without prejudice.

8        The Clerk of Court shall close the file.

9        **IT IS SO ORDERED.**

10  DATED:  December 8, 2009

11

12                                         Honorable Barry Ted Moskowitz
                                           United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28